David Shimano, appearing for appellate. Ronald Richards, appearing for affidavit. Mr. Shimano, do you wish to reserve time? I do, Your Honor. I'd like three minutes, please. Okay. Thank you. You may proceed. Good morning. May it please the Court. David Shimano on behalf of Satellite Capital. The panel had some questions regarding the interaction between this appeal and the District Court appeal. I suppose I should ask the panel whether they still have those questions and what I can do to answer those questions. Well, I think the problem we have is a range of motion problem. Because as I read the record, my other colleagues can speak for themselves, the decision here was made in some ways in two contexts. The motion context, which is the appeal here, and then an adversary proceeding context. And typically, if we had both appeals, we would have them together, and I would be able to determine whether the decision here, if an error was a harmless error because of the decision there, do I have that latitude? I mean, that's really the question. If I find error here in the motion context, do I have any latitude to look at the second decision and to say that that error was harmless? You don't, because I know you don't have the transcripts and the rulings in the adversary proceeding context. That's completely out of our ability to review. I think it's a fair characterization that with respect to the lien priority dispute, the first and second causes of action that are alleged, Judge Russell treated the order he entered on the Rule 60B motion as determinative of those ruling, of those causes of action. So that if you look at, for instance, the hearing on the motion to dismiss, which was eventually heard in the adversary proceeding, there's no discussion of any law or facts regarding the first and second cause of action. It's simply, well, I already ruled in the Rule 60 motion. So he precluded himself, basically. Right. And so the reason we had to do this appeal from the Rule 60 motion is because, hypothetically, we may get in front of the district court or back in front of Judge Russell, or in a state court where we actually argue the merits of the actions. We can't have a situation where that court says, well, I could have ruled for you, but since Judge Russell made a preclusive ruling in the Rule 60 motion, I'm bound. That's why this hearing, this appeal is so critical. It's not harmless error. Judge Russell, and it's part of the problem, he decided he was going to rule on the merits in the Rule 60 hearing. Well, as I understand it, so we've got the Rule 60 quality objections, and then you have three causes of action in the adversary proceeding, one of which was a pure State law issue that, again, I haven't looked at. But if he decides against you on that issue correctly, then isn't this appeal moot? No, no, because these are two alternative causes of action. If we were to lose on the third cause of action, we could still win on the first and second cause of action. They're entirely alternative and independent of each other. All right. Well, that, I think that exhausts, or you can certainly add to, I mean, we feel some constraints, and we feel some restrictions that being judges we don't like, but they are what they are, and we are where we are. So you may proceed with your argument. Thank you, Your Honor. Let me say it's very uncomfortable for me to be here in criticizing Judge Russell on this appeal. I'm not here arguing that Judge Russell made an error of law, that he misinterpreted the case, because Judge Russell cited no cases, he cited no statutes, he cited no rules. We're not here saying he made a mistake of fact. He didn't make any findings of fact. What he did was exercise raw judicial power to reach a result he wanted. And we as litigants, this dispute is a category of dispute that is not unusual. Parties enter into contracts, maybe it didn't have the result that they wanted. It's a typical dispute, and there's a body of law that governs adjudication of those disputes. Sometimes you can get relief, sometimes you can't, but there's rules and a body of law that governs it. And all we ask as litigants, if you're the judge, please apply the law and the rules, and sometimes you'll get a result that you don't like. And that happens, but that's your job as a judge. You can't work backwards. Can I ask a question, see if I'm following you? Is the problem that he heard a result, there was a result that he didn't expect, and that was a problem, as opposed to whatever the parties expected? Is that the problem, that he sort of put himself in that position? Well, that's exactly what he did. That's not what the 60B motion requested that he do, but that's what he did. He said, I'm ruling based upon what I anticipated what would happen when I entered the settlement. Was there any discussion in approving the settlement on that point? I mean, the only objection to the settlement related to value was that, I mean, broad brush, I understand, but the settlement, your client didn't oppose. The parties who did oppose were saying, we think there's more value there. We think this is, the pot's too small, in other words. We specifically did not oppose the motion because we believed that the argument that we raised subsequently in the quiet title action, we could make it based upon the settlement agreement. So we reviewed the motion. We reviewed the oppositions, the reply. We attended the hearing just to see what would occur, to see if this issue would in any way be raised. Because if it would have been, we would have addressed it, but it was not. How so? Well, we would have, we would have objected to any interpretation of the settlement agreement terms that were inconsistent with the settlement agreement terms. You would have interposed what you believed the party's intent was. We would have said, if it had been raised, we would have said your interpretation of the settlement agreement in a pleading is not consistent with your settlement agreement. Either your interpretation is just an interpretation, or you need to rewrite your settlement agreement. Or your notice. Or your notice, or whatever. But this issue was entirely unreserved. It was reserved. It was not addressed in any way prior to us, subsequent to the entry of the order as a final order. And so again, it was, so Judge Russell made a hindsight decision of what he thought in hindsight was supposed to be the deal. But again, his only role at that hearing was to decide whether the trustee's discretion was properly exercised in entering into the settlement agreement. This is the first hearing. The first hearing. That was his only role. If you look, we cite to the record, that's the only statements he made. He said, this is a good deal for the estate. I'm approving it. That was the intent of his order. And the fact that he, in hindsight, believes that the settlement reached a result that he didn't anticipate or he thinks is unjust or unfair, I understand that. I'm sympathetic to it. But that's not his role as a judge under Rule 60A to go back and intercede and basically say, I'm going to dictate how to do it. And the estate was expressly indifferent to it, right? Excuse me? The estate was expressly indifferent to it. Expressly indifferent. At the second hearing. The Rule 60 hearing. The Rule 60 hearing, the trustees' counsel said, this was, we're indifferent. It doesn't affect us another way. We would do the deal either way. We don't care. And. But that's not evidence, though. It's. That was argument. That was argument. But you do have the fact, and this is a fact, that continues to this day, even in their supplemental excerpts of record. If you look at Mr. Mastin's declaration in their supplemental excerpts of record in support of their second settlement, the Judge Russell's rewriting of the settlement agreement where he said, not all claims were released upon the closing of the settlement, the trustee appealed that. He said, that is not my settlement. And he believes that to his day, to this day. He has testified, that is not my settlement agreement. Go ahead. But you wouldn't disagree. All right. We have the Rule 60 context. And you're arguing today that his range of motion was limited, going to his range of motion, not ours. But he had the ability to interpret the settlement in the context of the adversary proceeding, correct? Whoever is the trier of fact in the adversary proceeding has the right to interpret that agreement. We do not believe Judge Russell had a subject matter jurisdiction. We raised that from the start. But that's the other appeal. That's the other appeal. Okay. But that's relevant, because Judge Russell was very adamant he was not going to allow any other judge to rule on this, because they might get a result that disagreed with Judge Russell. They might be wrong. They might be wrong, in Judge Russell's view. And if he let this go to the adversary proceeding, he might lose on subject matter jurisdiction. But your point here is that this is a very narrow issue. And you're telling us we look at Rule 60, we leave for the district court everything as quiet title, and we are just looking at the application of Rule 60. Absolutely. That is not going to impinge or touch upon intent, in your view. Absolutely. That's correct. All we ask is we get a hearing on the merits of the claims based upon the settlement agreement that the trustee and emaciation entered into, which Judge Russell approved. So what was the correct result in the Rule 60 motion? Deny it? Defer it? The correct result was because emaciation took the position that the settlement agreement did not extinguish their lien, there was no need for Rule 60 relief. There was nothing to correct. There was no mistake. There was no error. It didn't have any bad effect. Well, your point is, taking that further, is that intent is beyond. The party's intent in entering into that settlement agreement is apart from approval of the settlement agreement is a question beyond Rule 60. It would have been, if they had alleged mutual mistake, if they had alleged that, then I think that would be an issue the Court could have considered at the Rule 60 hearing. But they did not. They did not allege mutual mistake. Well, it wouldn't have been mutual anyway, right? Well, that's why they didn't allege it. They couldn't allege it. That's why on the merit of the Rule 60 motion. But, again, you're jumping to the fact. I mean, procedurally, that would have been proper. That would have teed up the right question, in your view, for the Rule 60 hearing. They could have raised that. I do believe that even if the Court denied the Rule 60 motion, based upon they still could raise issues in the quiet title action. They could say, this is the way this contract should be interpreted under California law. That's what we intended. Our intent matters. They could raise all those issues in the quiet title. They still can do that under our we're fine with that. All right. And you're at your, a little beyond your three minutes. Do you wish to continue or? If you have any questions, I want to answer them. Otherwise, I will reserve. We'll let you reserve. Thank you. Good morning. Ronald Richards for Emaciation Capital. Mr. Richards, why don't you start where we started with Mr. Shimano, which is, what are the limitations on our ability to act here? And in particular, to the extent we find error, are we free to find that it's harmless? Yeah, I do think you're limited because we filed for you a supplement two days ago. I don't know if you got it. It was kind of, we haven't decided what to do with it because it's procedurally improper. So why don't you tell me now what you're going to say? Yeah. I mean, I didn't know how else to deal with the question because it was such a broad question. But I agree with you. I'm not, I didn't know other way to deal with it. But the issue really is we have a expungeless pendants and a subsequent purchase by a bona fide purchaser. So you can't look at this case in a vacuum. You've got to look at what happened afterward. You have that and you also have on page 37 of the supplemental record. That's arguing mootness. Let's put mootness aside for a point. Assume we're not going to find that it's moot. You can then argue it that we should. But I'm asking a different question, which is you elected to take the second appeal to the district court, correct? Correct. Doesn't that hamstring us in a manner potentially disfavorable to you? Because if we had both appeals, we could look at the totality of everything. The rule 60 motion might be of less moment. But what can we do, if anything, about that second appeal? Well, it was a satellite that sought to stay. But I think that the district court will now easily apply California law and see that the security was extinguished. The buyer gets the property free and clear as a bona fide purchaser under California law, well settled California law. And Mr. Shimano's client can always sue the borrower. He's not left without a remedy. It's just the security is extinguished. The deed of trust due to the foreclosure. If you have the security. No, no. Well, in the record that's in front of you on page 37, it's almost honestly preposterous, and I've been a lawyer almost as long as Mr. Shimano, that a bankruptcy judge who's not a rubber stamp on any order under 11 U.S.C. 105, the court has broad discretion to clarify an order. So to suggest I think that's the problem is your client characterizes this as clarification of an order when in approving the settlement. I mean, you're firm or somebody on your side drafted the settlement agreement. There's an ambiguity. I may even agree with you that I like your theory of what it says better. But the ambiguity is in the settlement agreement, not in the judge's order. The judge's order said this is a good deal. This issue doesn't, from an estate perspective, doesn't change whether that's a good deal or not one iota, does it? What was happening, though, is the judge saw that a non-party to the settlement agreement who basically laid low, did not express any concerns, tried to basically hijack the deal the trustee made with the estate. And the judge properly, and this is a very experienced judge. How did they hijack the deal from the estate's perspective? Because they don't care. Well, no, because what happened is the estate got embroiled in litigation. Well, that's a different question. That's a whole different question. Because you pulled them into litigation. I mean, I get that. Well, because it was to suggest that the settlement called for a release of a 12.250 lien in exchange to pay the estate $108,000. That's your problem. That's not the estate's problem. Well, the estate, though. It became the estate's problem because of litigation, things that happen in litigation. People end up, you know, having claims back and forth. But from a contractual standpoint, that's not the estate's problem. Well, I'll tell you, I will respond to that question. I believe it's the estate's problem because the trustee in the record, they acknowledged the intent was not to release the first lien. It was simply to prevent any further deficiency claims against the estate. That comes after the fact. And the first hearing when asked, counsel says, we had no opinion. So a lot of what's going on here is jumping to the ultimate question is, what is the party's intent? That seems to be a factual question. Think about that. If you ---- No, I understand your point. We're going to have a trial now on the party's intent of the settlement agreement on a property that's been sold. That's in the district court. Right. But that's why the district court, if he affirms the dismissal based on numerous reasons why I believe it will be affirmed, then this appeal is more moot than even it is now. And there's no reason ---- A court has to have an injury to act. And in this case, the gravamen of the claim is in front of a district court judge that's going to apply California law and make a rational decision. You don't just get to keep ---- Why don't you bring a Rule 60 motion? I mean, you're making an impassioned argument for why you correctly should prevail at the adversary proceeding. Frankly, I have trouble seeing this as a Rule 60 motion. I'm just going to tell you right now. I don't understand why you did that, except that you got a ---- you had a judge, you got him angry, and you did some things. And they were favorable to you. But you have this very appropriate way to take this passion that you're displaying here today and to say, I win. Why the Rule 60 motion? You mean you want me to give you my mental thought processes? Well, I want you to argue that it was an error for him to decide this on a Rule 60 basis. I think that a bankruptcy judge has continuing authority to clarify a settlement that he approved himself. But that's ---- you just said it. Clarify the settlement versus clarify the order. That's the whole problem here. You just said it. You're trying to sell this. He's trying to sell this as ancillary jurisdiction to clarify my order approving the settlement. It sure looks like what he did was he went into the settlement agreement and he clarified the settlement agreement, which you do in an adversary proceeding. What he actually did is he clarified ---- It's hard to tell. I can address that. I want to answer that question. Believe me, this is not my first time I've been in front of you. I'm going to answer that question, though. This was a non-party to the settlement agreement. The judge saw that this non-party was creating havoc in this estate by preventing the settlement agreement, which the goal of the settlement agreement was to continue on with the foreclosure. That's why Mr. Shimano tried to get a restraining order, why he tried to stop the foreclosure, and did everything he could do to try to prevent the hearing as a junior lien holder. And so the judge saw that because Mr. Shimano was coming up with some really outlandish position, he simply clarified in the hearing and said, that wasn't my ---- When I approved this order, that wasn't my intent. I don't believe there's any rule or law that says a court is restricted from stopping something that the court did not believe would be the outcome of a settlement. That would be an insane holding that a judge now can't tell the parties, why do we have the judge approve the settlement? On Rule 60, it's not his inability to do it. It's the context doing it. But my question, then you go ---- What about under 105? He argued that, too. I brought the ---- No, 105 where you have Rule 60, I think we've got some Supreme Court authority that says, that kind of constrains our ability to use 105 when there's a perfectly good rule. In 105, I brought it right here. It says the court even ---- Everybody knows what it says. Okay. I don't buy it either. I do. You do? Yeah. I know what it says, too. You don't buy it or you do buy it? No, no. I'd like to stick to Rule 60. I think we're all expressing the same problem. We may well ultimately agree with you about what the quote right deal should have been, but how did you get there through Rule 60? That's the problem we're trying to express. Mr. Shimano is trying to cabin us to say we didn't argue mistake. The judge found under ---- we argued under Rule 60B, the motion was filed under, not under Rule 60A. The judge doesn't need to say on the record, I found there was a mistake. We presented the pathway under ---- That transcript is ---- Barren. It's bad. I mean, in terms of ---- there's just so much there and so little that really is helpful to figuring out what was going on. Let's take that position as someone reviewing this in the benefit of not having to be there in the hearing. Which would be us. Yeah, which would be you. But what I'm saying is the fact that the judge didn't outline all of his reasoning for granting the Rule 60 doesn't invalidate the granting. The judge isn't required. There was no request by Mr. Shimano that you need to make specific findings that outline all your basis. A court is not always required to outline why it made a decision. It's preferable. But if it doesn't, simply you could look at the order and was it an abuse of discretion. You're not ---- I understand that you're upset that he didn't tell you all the reasons why. We're upset. It's just, again, it makes a difficult case more difficult because I don't have the benefit, we don't have the benefit of him carefully walking us through why in this context this was the right decision. And what he did say leads to the conclusion that he wasn't evaluating his order, that he was going back to the settlement agreement. And I have a problem with in that context why that was an appropriate point of departure. But didn't the judge say that the way the order was being applied was an insane result? I mean, the judge was looking. The judge was concerned with what was going on by a non-party. He wasn't analyzing the intent of the parties. He was analyzing how this order was being abused between the first lien creditor, the only creditor that paid any money to this estate, and the trustee. And he was moving ---- The point remains it's not the order that's being abused. It's the settlement agreement that in the judge's mind is being abused. That's the point I believe Judge Taylor was trying to make. There's a difference between the order, which was properly considered or reexamined on Rule 60B, versus the interpretation of the party's intent on the settlement agreement. Well, that's ---- I don't think that's a hair, respectfully, Your Honor, that you split. Because if the judge approves a settlement order, he's part or she is part of the process. I think you're buying into the narrative that, well, he doesn't like that the judge didn't like his argument as to what the settlement agreement means. But an order approving the settlement doesn't restrict the judge from doing things in furtherance of the order. Because why else ---- It's a hair that, honestly, I've never seen split like this. There's no authority that was cited that a judge can't like an outcome of a settlement that they approved and clarify what their intent of their order was. You're going back into what the judge's mind was, and that's not in the record, except for the fact that he laid out that when he approved it all ---- I mean, look, when the judge said, I would not approve this had you raised this issue or I would not approve this with this outcome ---- If the trustee said that was what the deal was, you know, from an estate perspective, and, again, I don't necessarily ---- I don't want you to think I think. First of all, the agreement's ---- there is an ambiguity. The agreement does not say, plain language, the lien continues. Period. End of story. The agreement says it gives a broad release. You then reserve on preclusion purposes. And I think that's what you were relying on is when you gave up the secured claim that that couldn't be preclusive. But it wouldn't have been that tough to just say, and the lien survived. So ---- There was no reconveyance language in the release. I mean, if you were going to do a release that was going to reconvey a trustee, you have to reconvey. It's ambiguous. I'm not saying that you lose. Far from it. There's also language that says no other party can use this release offensively. That's the preclusion language. So let me tease this out. I don't want to take too much of your time. But so we have an ambiguity. I'm just, you're now saying, and Judge Russell is saying, I wouldn't have done that. And my question is, if the trustee had said that's absolutely what the deal was, did Judge Russell have the right at that point in time to say, no, I know what your deal was. I don't care what you think. I don't care what you say. Because that's in effect what he did. Because the trustee said, we never talked about that. I'm ambiguous. One party to the contract. I don't, I think at the time, by the way, that was the trustee's lawyer, not the trustee. I want to tell you why there's a difference in this case. The trustee's lawyer said what he said. And then he paid the price for it. Okay? And there was a subsequent. That's not in the record. No, it was in the record. Because in the record. They later came back and said. Clarified it. That, hey, we agree with your position. And there's an acknowledgment on page five that's a binding conclusive recital on page 37 of the record. And that's why we got it. He may not like it, but it is in the record. And you didn't have that. And Judge Russell didn't have that at the Rule 60 hearing. I know. But we have it now. And you can take judicial notice of it. And the fact is, is that it's there. So that. You know, we're still confusing, God darn it, I'm right with how did we get here. And that's our problem. Well, okay. But I want to then just stick with that problem. Because that seems more germane. I think a bankruptcy judge, if they approve any order of any settlement. Because otherwise, why are they involved? And they believe that something is going wrong with the execution of their order approving the settlement. They have the right to clarify the scope of that order. The trustee did not object to the judge clarifying the order. The trustee did not object to Judge Russell's sua sponte saying this is how I intended the order to act. I think it would be a horrible public policy precedent if you made any opinion that a bankruptcy judge is somehow hamstrung or have their hands tied behind their back to clarify a settlement that they approved. Because you are involving the court. You get the imprimatur of the court saying I'm approving this. If the thing goes haywire, the judge can't say, well, I'm sorry, some other party laid low, didn't object, and now I can't do anything because the 14 days of it passed. That's not how a court of equity works. And that's not realistic. Because the judge saw something here that was so profoundly ridiculous in his mind that it was going to create all sorts of other problems with the estate he was charged with administering that he simply clarified the order. But in this case, we have the benefit of time and other things occurred later on. But I think that, okay, I just will wrap it up. But I think that if you defer to Judge Carney now ruling on the merits, you don't need to get into this esoteric problem. I mean, I think that there still has to be. So we should stay even though he stayed? Well, he only stayed because Mr. Shimano asked for it, and then, you know, we would obviously send him a copy of your questions, and we would say that we think that you need to rule now on the merits. Because a lot transpired. You know, you keep for you got to realize the property was sold. Things occurred. We understand. My first question to him is going to be is it moot. So thank you for your good argument. All right. Thanks. Mr. Shimano, he went a couple of a little bit over, so I'll let you go a little bit over. But before you respond, can you generally respond to the mootness argument? Well, it was fully argued, and you ruled. I think you got it exactly right. I want to reiterate, they had an $8.3 million loan. They got the property pursuant to the settlement agreement, which at their pleading said was worth at least over $12 million, and they sold it last year for $15 million. Right. So even if they're right, now we don't have, no longer have any lien on the property, which I totally disagree with, a court could still order them to share the proceeds of the property based upon the facts of the case. That's absolutely not moot. Who would pay that? The senior lien holder. Okay. Not the buyer, as you're suggesting. You're not contesting the buyer's right to title. We've never contested the transfer of title to the lender. We said, fine. That was the whole point. We gave up trying to get title to the property. We just wanted to assert the lien right. That was the strategic decision. And that's a claim against emaciation out of the $15 million they got. Well, no, it's both. We believe that they lost their, they don't have a senior lien as of the settlement agreement. They could not foreclose. That means that our lien still remains on the property. All I'm trying to ask you is, if you have this remedy, it's a remedy, it's a money damages remedy. That's one of our remedies. And it's against emaciation. Correct. Okay. Correct. Do you have any remedies against the buyer? Close the loop. Not against the buyer, but we may have a remedy against the property, a nonrecourse right against the property. Got it. All right. Okay. I just want to reiterate that they have good arguments. I don't want to say winning arguments. They have colorable arguments. They made them. They're in their motion to dismiss. They're in their responses in support of their Rule 6. You can see their substantive arguments, legit arguments. We can have them in the adversary proceeding. That's how it should be ruled. And Judge Russell cut off the ability of any judge to look at the merits. And that's why we can't go back to Judge Carney until I think you do what's appropriate, which is to say, Judge Russell, you don't have the right to cut off another court from looking at these issues. I should emphasize this. You don't have it in the record. It's confusing in the January transcript. I was trying to get Judge Russell to clarify whether he was making a substantive preclusive ruling or he was basically giving an advisory opinion of his interpretation that another judge could pay attention to. In the very next hearing, the very next pleading, which was the motion to remand and the motion to expunge those pendants, we filed an opposition and we took that position. We said, we're interpreting your order, your Rule 60 order, as simply an advisory interpretation that another court consider. And he, on the record, was flabbergasted by that ruling. In his mind, he had made a substantive preclusive ruling. So we need this court to basically undo what he did and allow us to go back to Judge Carney and whatever trial court it turns out to be to make the substantive arguments. If our argument is frivolous, it will be easily ruled on in a motion to dismiss and we'll all be done. If it's not frivolous, maybe a result will occur that Judge Russell did not anticipate, but that's life and we have to just go with the rules. We can't just impose raw judicial power to get a result we want. Thank you. Thank you very much. This will be under submission. Excellent argument.
judges: Taylor, Lafferty, Spraker